IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KENNETH L. SIGMAN,

                Petitioner,

v.                                    CIVIL ACTION NO.   2:12-cv-00991
                                    (Criminal No. 2:07-cr-00032)

UNITED STATES OF AMERICA,

                Respondent.

MEMORANDUM OPINION AND ORDER

Pending before the Court is Petitioner Kenneth Sigman's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 filed April 6, 2012.   (ECF 46.)   This action was referred to former United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation for disposition ("PF&R").   On May 24, 2012, Magistrate Judge Stanley submitted her PF&R recommending that this Court deny Petitioner's § 2255 motion as untimely filed and dismiss this action with prejudice from the Court's docket.   (ECF 50.) Petitioner filed timely objections to the PF&R on June 12, 2012.   (ECF 51.)

## I.      BACKGROUND

On March 5, 2007, Petitioner pled guilty to a one-count information charging him with conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846. (ECF 23.)   Pursuant to this plea, Petitioner was sentenced to 135 months in prison on July 23, 2007.   (ECF 42.)   Petitioner did not file a notice of appeal after his sentencing, and so his

judgment of conviction became final on August 3, 2007.[1]   On April 6, 2012, Petitioner filed the instant § 2255 motion, pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), seeking a sentence modification.

The § 2255 motion challenges Petitioner's sentence as an improper application of the Sentencing Guidelines, as well as various allegedly vindictive and bad faith aspects of the prosecution and plea negotiations.   He argues that his sentence was unlawfully enhanced on the basis of (1) a role in the offense that was not found by a jury or admitted by Petitioner; and (2) additional quantities of drugs that were improperly attributed to Petitioner.   (ECF 46 at 4.)   As such, Petitioner argues that his sentence was in excess of the maximum authorized by law.   (*Id.* at 2.)   Petitioner further argues that he was unlawfully sentenced under "the mandatory Federal sentencing guidelines ineffective and [sic] the time . . . ."   (*Id.* at 4.)   Finally, Petitioner asserts that his guilty plea was involuntarily coerced by the law enforcement officials and prosecutors involved in the case.   (Id. at 7-8.)

## II.      PF&R AND OBJECTIONS

The Magistrate Judge determined that all of Petitioner's claims were time-barred.   Section 2255 imposes a one-year statute of limitations governing the filing of motions for collateral relief from federal convictions, and Petitioner's claim, as detailed above, was filed almost five years after his conviction became final.   The Magistrate Judge further found that Petitioner's motion was not based on a "new rule" made retroactively applicable to cases on collateral review, and thus the statute of limitations appropriately ran from the date on which Petitioner's judgment of

---

[1] In 2007, when final judgment was rendered, the Federal Rules of Appellate Procedure allowed a criminal defendant ten days to appeal. Fed. R.App. P. 4(b) (2007).   Based on this timeline, Petitioner had until August 2, 2007 to file an appeal.

conviction became final.  Finally, the Magistrate Judge concluded that, although the AEDPA limitation period is subject to equitable tolling, none of the exceptional circumstances justifying equitable tolling apply to Petitioner's case.   (ECF 50 at 3-4.)

In his objections to the PF&R, Petitioner does not specifically object to any of Magistrate Judge Stanley's findings, but raises a new argument not previously presented.   Here, Petitioner alleges ineffective assistance of counsel, in violation of the Sixth Amendment, based on allegations that his counsel "coerced" his plea, that counsel refused to take a direct appeal, and that the appellate waiver in Petitioner's plea agreement was invalid because based on erroneous and constitutionally deficient advice from counsel.  (ECF 51 at 1-3.)   Petitioner relies on the (at the time) recent Supreme Court decisions in *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 376 (2012), as the basis for his ineffective assistance of counsel argument. Specifically, Petitioner contests the voluntariness of his plea rather than raising any direct sentencing issues.  (ECF 51 at 2.)

Finally, Petitioner's objections request that this Court issue a "Certificate of Appealability," purportedly to allow Petitioner to file a second § 2255 motion.   Petitioner was apparently under the belief that his original petition had not been considered by the Court.   (*Id*. at 3.)   As an initial matter, to the extent Petitioner seeks authorization to file a second or successive § 2255 motion, he has petitioned the wrong court.   By the terms of AEDPA, such requests are to be made to the court of appeals, not the district court.   28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.").   In any case, this Court has considered and will fully address the new arguments

3

raised in Petitioner's objections, rendering it unnecessary for Petitioner to file a new petition making those arguments.

### III.     STANDARD OF REVIEW

The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, this Court need not conduct a de novo review when a petitioner "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). However, "as part of its obligation to determine de novo any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate."  *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992).   In reviewing Petitioner's objections, this Court will consider the fact that Petitioner is acting pro se, and his pleadings will be accorded liberal construction.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

### IV.     DISCUSSION

Petitioner makes no specific objection to any of the findings or recommendations in the PF&R.  While Petitioner reiterates his contention that prosecutorial misconduct made his guilty plea involuntary, he does not object to any portion of the Magistrate Judge's analysis or point the Court to any errors with respect to that issue in the PF&R.  This Court need not conduct a de novo

4

review of such objections.  *See Orpiano*, 687 F.3d at 47.   Accordingly, the Court **ADOPTS** the

PF&R and **DENIES** the claims contained in Petitioner's original motion as untimely.[2]

Petitioner further argues, however, that his attorney was constitutionally deficient during

the plea bargaining process.   Liberally construed, Petitioner's objections argue that his motion is

not time-barred because filed within one year of the Supreme Court's announcement of a "new

rule," within the meaning of § 2255(f)(3).   The Court conducts a de novo review of this argument

and, for the reasons discussed herein, finds Petitioner's claim to be time-barred by AEDPA's

statute of limitations.

As noted in the PF&R, AEDPA imposes a one-year statute of limitations to govern the

filing of § 2255 motions for collateral relief.   This period begins running from the latest of the

following events:

(1)  The date on which the judgment of conviction becomes final;
(2)  The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3)  The date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable on collateral review; or
(4)  The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

---

[2] As noted in the PF&R, the claims raised before the Magistrate Judge are also procedurally defaulted because they could have been raised on direct appeal and were not.   A habeas petitioner may not collaterally attack a conviction or sentence based upon errors that could have been raised on direct appeal unless he can show "cause and actual prejudice resulting from the errors of which he complains" or that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."   *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999) (citations omitted).   The PF&R correctly notes that Petitioner has alleged no such showing.   "Miscarriage of justice" can only be shown by clear and convincing evidence of actual innocence.   *Id*. at 493.   Here, Petitioner does not assert his innocence.   Moreover, "cause" for purposes of overcoming a procedural default in this context must turn on something "external to the defense," such as a novel claim or ineffective assistance of counsel.   *Id*. (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).   Petitioner does allege, in his objections, that his counsel was ineffective for failing to file an appeal.   As will be discussed below, that argument is time-barred by the AEDPA statute of limitations.   He did not, however, raise that argument before the Magistrate Judge.   Thus, the PF&R was correct to conclude that, as to the claims before the Magistrate Judge, Petitioner had failed to adequately justify his procedural default.

28 U.S.C. § 2255(f).

Petitioner's judgment of conviction became final on August 3, 2007, and the instant motion was filed on April 6, 2012. Neither his petition nor his objections to the PF&R allege the discovery of new evidence[3] or any governmental impediment to earlier filing his motion. Thus, in order to be timely, Petitioner's motion must come within the shelter of § 2255(f)(3). Petitioner asserts that it does because the Supreme Court's companion decisions in *Frye* and *Lafler* represent a newly recognized right made retroactively applicable to cases on collateral review. The Supreme Court issued both decisions on March 21, 2012. Therefore, Petitioner argues that his April 6, 2012 motion in reliance thereon was timely. *See Dodd v. United States*, 545 U.S. 353, 357–58 (2005) (holding that the limitation period in § 2255(f)(3) runs from the date on which the Supreme Court recognizes the new right, not the date on which the new right was "made retroactive[]"). Petitioner is correct that his motion was filed within one year of the Supreme Court decisions at issue. However, in order to gain the benefit of the § 2255(f)(3) limitations period, he must make two further showings: (1) that the case involves a new right recognized by the Supreme Court; and (2) that the right has been made "retroactively applicable to cases on collateral review . . . ." *United States v. Mathur*, 685 F.3d 396, 398 (4th Cir. 2012).

The first requirement can be broken down into two distinct sub-requirements. One is that the claim relies on a "new right," or a new rule of constitutional law as that term of art has been

---

[3] Petitioner makes one reference in his objections to "new evidence" which will cast a "different light on the elements of the case, and bring into focus precisely how the constitutional rights of the petitioner were denied." (ECF 51 at 3.) As discussed below, Petitioner makes this reference in the context of arguing for the right to file a second § 2255 motion to further his ineffective assistance claims. He makes no other mention of any new evidence anywhere else in either his § 2255 motion or his objections, and provides no description of the nature of the evidence or its relation to any of the claims stated in his petition and objections. The Court does not construe this isolated reference to be an argument in favor for extending the statute of limitations period relevant to his motion. In any case, Petitioner has provided the Court with no details that would allow it to analyze such an argument.

6

defined by the analysis of *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny.   Prior to that, however, the Petitioner must show that his claim actually implicates the new rule of law on which it is based.   In this case, Petitioner's claim does not appear to invoke the right recognized by the *Frye*/*Lafler* decisions.

In both *Frye* and *Lafler*, the Supreme Court addressed the constitutional obligations owed by counsel to criminal defendants with respect to government plea offers.   *See Lafler*, 132 S. Ct. at 1382–83 ("In this case, as in [*Frye*], also decided today, a criminal defendant seeks a remedy when inadequate assistance of counsel caused nonacceptance of a plea offer and further proceedings led to a less favorable outcome.").   In both situations, the government made plea offers to a criminal defendant and, as a result of counsel's deficient performance, the defendant did not accept that offer and ended up with a final disposition more severe than the disposition proposed in the plea offer.   *Id*.   In *Frye*, the defendant's attorney failed to communicate two plea offers to the defendant, causing them to lapse.   *Frye*, 132 S. Ct. at 1404.   Eventually, the defendant pled guilty without the benefit of a plea agreement, and received a much more severe sentence than had been contemplated in the earlier plea offers.   *Id*.   In *Lafler*, the defendant's attorney managed to communicate the plea offer, but his erroneous advice led the defendant to reject the offer.   *Lafler*, 132 S. Ct. at 1383.   The defendant ultimately proceeded to trial and was convicted, receiving a harsher sentence than was offered in the rejected plea bargain.   *Id*.

In both cases, the Court emphasized that the right to counsel, and the familiar *Strickland* analysis [4] for determining constitutionally deficient performance and prejudice, was already

---

[4] In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test to analyze 6th Amendment claims based on ineffective assistance of counsel.   Under this framework, a criminal defendant must first show that his counsel's efforts were objectively unreasonable when measured against prevailing professional norms. Second, he must demonstrate that counsel's deficient performance was prejudicial, in that there was a reasonable

generally applicable in the plea bargain context.   *Id*. at 1384; *Frye*, 132 S. Ct. at 1405.   In

particular, the 1985 case *Hill v. Lockhart* established that "the two-part *Strickland v. Washington*

test applies to challenges to guilty pleas based on ineffective assistance of counsel."   474 U.S. 52,

58.   In *Hill*, the issue before the Court was how to determine *Strickland* prejudice when the

ineffective assistance claim alleged that the guilty plea itself was invalid as a result of counsel's

incorrect advice pertinent to that plea.   In that situation, the Court held that the injury was being

forced to accept a bad plea rather than going to trial, and held that, in order to show prejudice, "the

defendant must show that there is a reasonable probability that, but for counsel's errors, he would

not have pleaded guilty and would have instead gone to trial."   *Id*. at 59.   *See also Padilla v.*

*Kentucky*, 559 U.S. 356, 373 (2010) (finding that an attorney has a constitutional duty to inform

his client about the immigration consequences of a guilty plea and noting that "we have long

recognized that the negotiation phase of a plea bargain is a critical phase of litigation for purposes

of the Sixth Amendment right to effective assistance of counsel").

     In *Frye* and *Lafler*, on the other hand, the Court was faced with a different application of

the *Strickland* analysis.   Specifically, the issue was determining constitutional harm where the

alleged deficient performance comes outside of the formal plea bargaining process.   *See Frye*,

132 S. Ct. at 1406 (unlike with the situations in *Hill* and *Padilla*, "the challenge is not to the advice

pertaining to the plea that was accepted but rather to the course of legal representation that

preceded it with respect to other potential pleas and plea offers.").   In that context, the Court

recognized that the standard for prejudice could not turn, as it did in *Hill*, on whether the defendant

would have gone to trial in the absence of the lawyer's deficient performance.   Rather, because

---

probability that, but for counsel's error, the outcome of the proceeding would have been different.   *Frazer v. South*
*Carolina*, 430 F.3d 696, 703 (4th Cir. 2005) (citing *Strickland*, 466 U.S. at 688–90, 694).

the ineffective advice led to a plea offer's rejection (or lapse) instead of its acceptance, the prejudice involved is "[h]aving to stand trial, not choosing to waive it . . . ."  *Lafler*, 132 S. Ct. at 1385.   The import of the *Frye* and *Lafler* decisions, then, was to extend the *Strickland* framework (and its determination of what deficiencies create constitutional harm) that already applied in the plea bargaining stage further upstream in the plea process to "the negotiation and consideration of plea offers that lapse or are rejected."   *Id*. at 1404.

In this case, Petitioner does not argue that his counsel either failed to communicate a plea offer to him or gave him erroneous advice that caused him to reject a plea offer.   Rather, he alleges that his counsel's ineffective performance "during the plea bargaining stage" caused Petitioner to enter into an involuntary plea agreement.   (ECF 51 at 2.)   As Petitioner admits, his challenge is to the voluntariness of his plea.   (*Id*.)   Such an allegation fits within the constitutional claims recognized in cases like *Hill* and *Padilla*, and thus does not rely on the constitutional analysis, specifically related to unaccepted plea offers, announced in *Frye* and *Lafler*.   *See Hill*, 474 U.S. at 56 ("Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was 'within the range of competence demanded of attorneys in criminal cases'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970))); *United States v. Brown*, No. 3:01-CR-304-12, 2013 WL 2317794, at *3 (E.D. Va. May 28, 2013) (addressing a habeas petitioner's claim that he "received poor advice from his attorney in deciding to accept a plea offer" and determining that the claim "fits squarely within the *Hill* and *Padilla* decisions, and [petitioner] therefore does not rely on a new Supreme Court decision in asserting his first claim for relief").[5]

---

[5] Petitioner also claims that his counsel was ineffective for failing to file a direct appeal of Petitioner's criminal conviction.   Such alleged failure on the part of counsel was not addressed in *Frye* or *Lafler*.   Moreover, counsel's

Even liberally construing Petitioner's claims to invoke the law announced in *Frye* and *Lafler*, this Court does not find that those decisions announced a "new rule" for purposes of § 2255(f)(3).  Because the language in AEDPA about new rules and retroactive application have their genesis in the pre-AEDPA case of *Teague v. Lane*, 489 U.S. 288 (1989), courts generally look to that case and its progeny to interpret the statutory language.  *See*, e.g.*, United States v. Mathur*, 685 F.3d at 399.   While the issue of which Supreme Court decisions constitute a new rule is "often difficult to determine," the general rule is that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government."  *Teague*, 489 U.S. at 301.

For many of the reasons already described, the *Frye* and *Lafler* decisions do not so much "break ground" as apply an existing constitutional rule into a slightly different context.   Rather than announcing a new constitutional requirement, the decisions merely define a new way in which to demonstrate prejudice under the *Strickland* ineffective assistance of counsel framework.   *See Chaidez v. United States*, 133 S. Ct. 1103, 1107–08 (2013) (noting that the *Strickland* standard provides sufficient guidance for "virtually all" claims of ineffective assistance and that "we have granted relief under *Strickland* in diverse contexts without ever suggesting that doing so required a new rule").

---

constitutional obligations relating to the filing of appeals has been an established component of the Supreme Court's Sixth Amendment jurisprudence since well before Petitioner's conviction became final, and thus cannot form the basis for any "new right" within the meaning of § 2255(f)(3).   *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (holding that *Strickland* analysis applied to claims "that counsel was constitutionally ineffective for failing to file a notice of appeal").   To the extent Petitioner challenges the appeal waiver contained in the plea agreement as the result of ineffective assistance, that argument is just another iteration of Petitioner's challenge to the plea bargaining process, addressed above.

Accordingly, the vast majority of courts that have taken up the issue have determined that *Frye* and *Lafler* do not announce a new constitutional right under AEDPA.[6]  *See In re Graham*, 714 F.3d 1181, 1183 (10th Cir. 2013); *Williams v. United States*, 705 F.3d 293, 294 (8th Cir. 2013) (per curiam); *In re Perez*, 682 F.3d 930, 932–34 (11th Cir. 2012); *Buenrostro v. United States*, 697 F.3d 1137, 1140 (9th Cir. 2012); *In re King*, 697 F.3d 1189, 1189 (5th Cir. 2012) (per curiam); *Hare v. United States*, 688 F.3d 878, 879 (7th Cir. 2012); *Gallagher v. United States*, 711 F.3d 315, 315–16 (2d Cir. 2013) (per curiam).   In addition, the Fourth Circuit has drawn the same conclusion while reviewing the timeliness of a § 2255 motion, albeit in an unpublished, per curiam opinion.   *See Harris v. Smith*, 548 F.Ap'x. 79, 79 (4th Cir. 2013) (citing *Perez* for the proposition that *Frye* and *Lafler* "did not announce a new rule of constitutional law").   Perhaps most importantly, both *Frye* and *Lafler* were decided in the post-conviction context.   *Lafler* makes explicit that the state court decision it was overturning was "contrary to clearly established law." *Lafler*, 132 S. Ct. at 1390.   This determination is a strong indication that the law the case announced was not new.   *See Perez*, 682 F.3d at 933 ("To be 'clearly established federal law' within the meaning of AEDPA, the rule applied in *Lafler* must, by definition, have been an old rule within the meaning of *Teague*." (citation omitted)).

Moreover, a determination that a Supreme Court decision announces a new rule is still not the end of the § 2255(f)(3) analysis.   For a petition not to be time-barred, the Supreme Court

---

[6] These decisions were rendered in the context of analyzing claims to file second or successive § 2255 motions. However, the standard for allowing such petitions uses similar language as § 2255(f)(3).   *See* 28 U.S.C. § 2255(h) (second or successive motion must be certified if, in pertinent part, it relies upon "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable").   As such, courts commonly use the same *Teague* analysis when interpreting both provisions.   *See*, *e.g.*, *Wert v. United States*, 596 F.Ap'x. 914, 918 (11th Cir. 2015) (noting that the *Teague* analysis used in the context of an application for a successive § 2255 motion "is the same analysis we apply to determine whether *Lafler* newly recognized a right for purposes of § 2255(f)(3)").

decision must further have been made retroactively applicable to cases on collateral review. Under the relevant *Teague* analysis, new constitutional rules of criminal procedure are generally not to be applied retroactively to criminal cases on collateral review.  *Teague*, 489 U.S. at 303–04 (citing *Mackey v. United States*, 401 U.S. 667, 675) (Harlan, J., concurring in judgments in part and dissenting in part); *see also Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) ("When a decision of this Court results in a 'new rule,' that rule applies to all criminal cases pending on direct review. As to convictions that are already final, however, the rule applies only in limited circumstances." (citations omitted)).   There is thus a strong presumption against retroactive application to habeas petitions, based on the important need to promote the "principle of finality which is essential to the operation of our criminal justice system."  *Johnson v. Ponton*, 780 F.3d 219, 223 n.3 (quoting *Teague*, 489 U.S. at 309).

*Teague* recognized two exceptions in which this general presumption could be overcome. First, "a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Teague*, 489 U.S. at 311 (citations omitted).  This exception is necessary to prevent a criminal defendant from standing "convicted of an act that the law does not make criminal."  *Bousley v. United States*, 523 U.S. 614, 620 (1998) (citations omitted).  Here, the rule Petitioner seeks to avail himself of relates to the effectiveness of the legal representation to which a criminally accused is entitled under the Sixth Amendment.   As was the case in *Teague* itself, that type of rule "would not accord constitutional protection to any primary activity whatsoever."  *Id.*

Petitioner's proffered rule does implicate, on the other hand, the second exception, which applies to rules of criminal procedure.  *See*, e.g.*, Chaidez*, 133 S. Ct. at 1107 (treating a new

application of the *Strickland* standard as a rule of criminal procedure and analyzing under *Teague*'s second exception).   A new procedural rule should only apply retroactively if it is a watershed rule of criminal procedure, "implicit in the concept of ordered liberty, and if, without the procedure, 'the likelihood of an accurate conviction is seriously diminished.'"   *Mathur*, 685 F.3d at 399 (quoting *Teague*, 489 U.S. at 311, 313).   The Supreme Court has maintained that the class of watershed procedural rules is necessarily "extremely narrow" and has expressed serious doubt as to whether any such rules have yet to emerge.   *Schriro*, 542 U.S. at 352.   *See also Johnson*, 780 F.3d at 224 ("[T]he Supreme Court has never found a new procedural rule to be 'watershed' despite the fact that it has considered the question fourteen times"); *Mathur*, 685 F.3d at 399 ("The only case that the [Supreme] Court has ever suggested might qualify for retroactive application under the second *Teague* exception is *Gideon v. Wainwright* . . . .").

Petitioner's motion thus fails to satisfy the requirements of § 2255(f)(3) at every step of the analysis.   The petition does not implicate any new rule that would prevent his claim from being time-barred for three reasons.   First, the ineffective assistance of counsel claim is based on the well-established rule of constitutional law that assistance of counsel is required at the plea bargaining stage to protect against a defendant's involuntary plea agreement.   It does not implicate the holdings in *Frye* and *Lafler*, which address the prejudice resulting from the situation in which a defendant does not accept a government plea offer.   Second, even if Petitioner's motion did implicate *Frye* and *Lafler*, the weight of authority (and the analysis of this Court) suggest that those decisions did not announce any new right.   Finally, were the Court to get that far, it would be highly unlikely to determine that the decisions in *Frye* and *Lafler* are retroactively applicable.

Accordingly, the Court **OVERRULES** the new argument based on ineffective assistance raised in Petitioner's objections.

Finally, Petitioner's objections make vague reference to "new evidence" that will "cast a different light on the elements of the case, and bring into focus precisely how the constitutional rights of the petitioner were denied."  (ECF 51 at 3.)  Petitioner appears to make this argument in support of his request to make further arguments in a second § 2255 motion.  He makes no other reference to this new evidence anywhere else in either his original petition or objections, nor does he provide any description of what those facts might be or how they might relate to his claim. Further, Petitioner does not explicitly request an evidentiary hearing. Out of an abundance of caution, however, the Court will treat Petitioner's allusion to new evidence as a request for an evidentiary hearing.

In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  *See*, e.g.*, United States v. Mitchell*, 484 F. App'x 744, 745 (4th Cir. 2012) (reciting standard).  An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue.   *United States v. Witherspoon,* 231 F.3d 923, 925–27 (4th Cir. 2000).  *See also Raines v. United States,* 423 F.2d 526, 530 (4th Cir. 1970).  The decision as to whether an evidentiary hearing is necessary is within the discretion of the district court.  *Conaway v. Polk,* 453 F.3d 567, 582 (4th Cir. 2006).

In this case, Petitioner alludes to new evidence but does not provide any description of that evidence.   In light of the Court's determination that the record conclusively demonstrates that all of Petitioner's claims are time-barred, the Court **DENIES** Petitioner's request for an evidentiary hearing.

### V.     CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Petitioner's objections (ECF 51), **ADOPTS** the PF&R (ECF 50) to the extent that it is consistent with this memorandum opinion and order, **DENIES** Petitioner's § 2255 motion (ECF 46), **DENIES** Petitioner's request for an evidentiary hearing, and **DISMISSES** this case from the Court's docket.

The Court has also considered whether to grant a certificate of appealability.   *See* 28 U.S.C. § 2253(c).   A certificate will be granted only if there is "a substantial showing of the denial of a constitutional right."   *Id*. at § 2253(c)(2).   The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable.   *Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S., 437, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).   The Court concludes that the governing standard is not satisfied in this instance.   Pursuant to rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2255, Petitioner may not appeal the Court's denial of a certificate of appealability, but he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. The Court thus **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 28, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

16